McKinney,
J., delivered the opinion of the Court.
*87 The complainants seek by this bill, to subject to sale a tract of land, of •which the defendant, A. C. Essel-man, is equitable owner, in discharge of a liability with which they have become fixed, as the sureties of Essel-man for the consideration money of said land.
It appears that the defendant, A. C. Esselman, purchased a tract of land, lying in (riles county, from the executors of James C. Esselman, deceased, under a power contained in the will of the testator, and executed his note to said executors for the purchase money, with the complainants as his sureties; which note, upon its face, expressed “that the land should stand bound for the payment of the purchase money.” The executors executed a bond for title to be made when the purchase money should be paid — the legal title, which was in the minor children of the deceased — being retained as a further security for the purchase money.
The executors brought suit upon the note, and at the October Term, 1855, of the Circuit Court of Giles, recovered a joint judgment against Esselman, and the complainants for the sum of $2609 64, the residue of the purchase money of said land. And at the same term of the Court, the complainants obtained judgment over, by motion, against Esselman, their principal for the amount of the judgment rendered against them.
Upon this latter judgment, the complainants caused an execution to be issued on the 17th of November, 1855, which was returned “nulla bona.”
On the 20th of February, 1856, the complainants— without having paid any thing to the executors of James C. Esselman, in satisfaction of the judgment in their favor, for the purchase money of the land — brought *88 this bill against Esselman, their principal, and the executors, and minor children of said James 0. Esselman, to have said tract of land sold for the satisfaction of the judgment obtained, on motion, bj the complainants; and on the hearing of the cause, the Chancellor decreed accordingly. From this decree the defendant, A. C. Esselman, appealed.
We do not perceive the principle upon which this decree can be supported. Certainly it cannot be maintained on the ground assumed in the bill, and made the basis of the relief granted by the decree, as it would seem, namely, that the mere expression in - the note— “that the land was to stand bound for the purchase money” — of itself created a lien, or equitable mortgage on the land, in favor of the sureties to the note. This stipulation in the note — if any effect whatever could be predicated of it — -would be taken as inuring to the benefit of’ the vendors, rather than the sureties. But it can have no effect; it amounts to nothing more than a mere declaration of intention, and is simply nugatory. Under our law, there can be no such ■ thing ’ as a parol, or equitable lien, or mortgage, on real property. A valid lien, or mortgage, can only be created by an instrument, proved and recorded, as prescribed by the registry act of 1831.
Nor can this decree be upheld upon the equitable doctrine of substitution. It is admitted, that upon satisfaction of the debt to the vendor, the sureties would be entitled to be substituted to the rights of the former. But the foundation of this right, is, the fact of their having previously discharged the debt — without payment of the money, no such equity can exist in their favor. *89 If the complainants bad advanced tbe purchase money, they might well claim to avail themselves of all the remedies of the vendors; and • because the latter, by means 'of their equitable right of lien, could have subjected the interest of the purchaser, in the land to the payment of the purchase money, the complainants, for their re-imbursement, would be entitled, by substitution, to assert' the same right. But, under the circumstances, they have no such right. Nor would the assent of the vendors that the complainants for their own indemnity, might proceed .to subject the land to the satisfaction of the judgment obtained by motion, through the equitable right of lien in the vendors, give the complainants. a status in this case; because the foundation of any such relief — the actual payment of the money — ■ would still be wanting. But here the vendors, in their answer, expressly refuse to transfer their lien, or to forego any right existing in their favor. True, they give a qualified consent that the complainants may, if they can, proceed to have the land sold; but with the express reservation, that their right to hold it subject to the satisfaction of their debt, shall remain unimpaired. This amounts to nothing, and can have no influence on the determination of the case.
Neither can the bill be maintained upon the principle of a bill quia timet. It is admitted, that the doctrine seems to be now established that a surety may come into equity; and, bringing both the creditor and the debtor before the Court, may have a decree to compel the latter to make payment of the debt, so as to exonerate the surety from his liability. This doctrine contemplates, a case where the creditor refuses or neg *90 lects to proceed to enforce tbe payment of his debt, by proper legal proceedings. It would not seem to be properly applicable to a case like the present, where the creditors, in fact, were actively pursuing their remedy to enforce satisfaction of their debt; but the surety, for some reason not disclosed, saw proper to intervene, officiously, and claim the right to take the matter out of the hands of the creditors. The just applicability of this doctrine, with us, is perhaps rendered somewhat questionable, in view of the very ample and effectual remedies quia timet, given, by our statuary law, to sureties, in the legal forum; by which the surety, by a very summary proceeding may entitle himself to take control of the matter, and coerce payment from the principal, without the aid of a Court of Equity.
Whether or not, upon a proper construction of the statutes giving this new remedy to sureties, the existing remedies, in equity, are to be regarded as at all enlarged, or in any manner affected, is a question not necessary to be -now considered; for upon the frame of the' present bill, to maintain that the complainants could subject the land to the satisfaction of the judgment by motion, in their own favor individually, would be in direct hostility to the fixed, pre-existing equitable rights of the vendors, to hold said land subject to their lien as vendors. Suppose the decree of the Chancellor in the present case were executed, the land sold, and the proceeds appropriated by the complainants to their own use, in what predicament are the vendors left, in the event of the insolvency of the complainants ?
But we need suppose no extreme case, in order to test the principle; it is enough that in the aspect in which *91 tbe present bill is framed, tbe right which it seeks to assert, is incompatible with the prior, and better right of the vendors.
The decree is erroneous: it will be reversed and the bill dismissed, without prejudice.